```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                        CHARLESTON
```

**ADMIRAL INSURANCE COMPANY,**
     **Plaintiff,**

v.                                           Civil Action No. 2:06-00646

**INDEPENDENCE COAL COMPANY,**
**INC., a West Virginia corporation,**

     **Defendant.**

### MEMORANDUM OPINION AND ORDER

Currently pending before the court is Defendant Independence Coal Company's Motion to Dismiss, filed March 7, 2007. (Docket # 12.) Plaintiff responded on March 21, 2007 (# 16), and Defendant replied on March 29, 2007 (# 17), making the matter ripe for the court's consideration.

<u>Factual Allegations and Procedural Background</u>

Plaintiff Admiral Insurance Company ("Admiral") filed the instant declaratory judgment action pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, on August 18, 2006. Admiral seeks a declaration from this court as to the applicability of coverage under a policy of insurance Admiral had with its insured, River Oaks Construction Company ("River Oaks"). The underlying facts, as alleged by Admiral, are that in May of 2005, Christopher Shadd, who was an employee of River Oaks, was operating a coal truck on property owned by Defendant Independence Coal Company ("Independence") pursuant to an independent contractor

agreement between Independence and River Oaks.  Independence and River Oaks entered into an independent contractor agreement setting forth River Oaks' indemnification obligations to Independence as well as River Oaks' obligation to procure specified insurance coverage for Independence.  Mr. Shadd parked his coal truck and went to use a portable toilet located on the property when a loader operator employed by Independence intentionally dumped a loader bucket of coal on the portable toilet, injuring Mr. Shadd.

On or about October 31, 2005, Mr. Shadd and his wife filed suit in the Circuit Court of Kanawha County, West Virginia, against Independence and Massey Coal Services, Inc., as the ostensible owner of Independence, for personal injuries caused by Independence's loader operator.  Neither River Oaks nor Admiral was named in the underlying action.  After being served with the complaint in the underlying action, Independence demanded that River Oaks defend and indemnify it pursuant to the independent contractor agreement.  Independence also demanded a defense and indemnity from Admiral.  Admiral subsequently denied coverage for the claim and refused to defend or indemnify Independence in the underlying action based on the terms and certain exclusions set forth under the commercial general liability policy of insurance issued by Admiral to River Oaks.  This state court action filed by the Shadds has since settled.

Since Admiral filed the instant declaratory judgment action in federal court, Independence answered the complaint on January 10, 2007. In addition, the parties met pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, and filed their Rule 26(f) report on February 21, 2007. Independence filed the instant Motion on March 7, 2007.

On January 18, 2007, shortly after answering the complaint in the instant federal action, Independence filed a civil action in the Circuit Court of Kanawha County, West Virginia against Admiral, River Oaks, and Songer Insurance Agency. In the complaint, Independence seeks a declaratory judgment that Admiral was obligated to provide Independence with a defense and indemnity in the state action filed by the Shadds. Independence also seeks a declaration that River Oaks was obligated to indemnify it and pay defense costs under the independent contractor agreement. The complaint seeks damages from Songer Insurance Agency for negligent failure to procure proper insurance coverage as requested by River Oaks for its operations performed for Independence. Finally, Independence alleges violations of West Virginia's Unfair Trade Practices Act ("UTPA"), West Virginia Code § 33-11-1 et seq., by both Admiral and Songer Insurance Agency. See Independence Coal Company, Inc. v. Admiral Insurance Company; River Oaks Construction, Inc.; and Songer Insurance Agency, Inc., Circuit Court of Kanawha County, West Virginia, Civil Action Number 07-C-

3

116. Admiral has filed a motion to dismiss, or, in the alternative, a motion to stay the state court proceedings. In its motion, Admiral asks the state court to abstain from exercising its jurisdiction until this action is resolved. Songer Insurance Agency has joined in the motion. Admiral indicates there has been no scheduling conference set by the state court, no written discovery and no depositions taken. The parties have since advised the court that a hearing on Admiral's motion to dismiss was scheduled for the end of April, 2007, but was rescheduled to June 12, 2007.

Standard

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that federal courts "may declare the rights and other legal relations of any interested party seeking such declaration." While federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," Colorado River Water Conser. Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), a "district court need not be faced with exceptional circumstances to stay or dismiss duplicative litigation in the declaratory judgment context," Gatewood Lumber, Inc. v. Travelers Indemnity Co., 898 F. Supp. 364, 366 (S.D. W. Va. 1995). In Wilton v. Seven Falls Co., 515 U.S. 277, 288, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995), the United States Supreme Court explained that

> [b]y the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it

> created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

(footnote omitted); see <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942) ("The petitioner's motion to dismiss the bill was addressed to the discretion of the court.").

Importantly, "[t]his discretion is not unbounded, ... a district court may not refuse to entertain a declaratory judgment action out of 'whim or personal disinclination,' but may do so only for 'good reason.'" <u>Nautilus Ins. Co. v. Winchester Homes, Inc.</u>, 15 F.3d 371, 375 (4th Cir. 1994) (citations omitted); <u>Aetna Cas. & Sur. Co. v. Quarles</u>, 92 F.2d 321, 324 (4th Cir. 1937) ("[T]he discretion to grant or refuse the declaratory relief 'is a judicial discretion, and must find its basis in good reason[.]'").

In <u>Nautilus</u>, our Court of Appeals reiterated its holding in <u>Quarles</u> that a

> federal district court should normally entertain a declaratory judgment action within its jurisdiction when it finds the declaratory relief sought (i) "'will serve a useful purpose in clarifying and settling the legal relations in issue,'" and (ii) "'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"

Nautilus, 15 F.3d at 375 (quoting Quarles, 92 F.2d at 325) (other citations omitted).

In addition to the factors set out in Quarles, a district court must consider issues of "federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts." Nautilus, 15 F.3d at 376.  Citing its decision in Mitcheson v. Harris, 955 F.2d 235, 237-40 (4th Cir. 1992), the Fourth Circuit indicated in Nautilus that these areas of concern might require the court to consider:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law[;]" ... [and (iv)] whether the declaratory judgment action is being used merely as a device for "procedural fencing" - that is, "to provide another forum in a race for res judicata" or "to achiev[e] a federal hearing in a case otherwise not removable."

Nautilus, 15 F.3d at 377 (citations omitted).[1]

---

[1] In Gatewood, the late Judge Charles H. Haden stated "it is not clear, post *Wilton*, [whether] a district court in this circuit is now required to consider the *Quarles/Nautilus* framework in its decisions to stay or dismiss declaratory judgment actions.  Although the *Nautilus* factors continue to provide a useful guideline for a district court to use in deciding whether to entertain a declaratory judgment action, to the extent that they are viewed as a set of rigid governors of a district court's discretion, they may no longer be strictly binding." Gatewood, 898 F. Supp. at 368.  Because our Court of Appeals has not indicated otherwise, the court will proceed with a consideration of the Quarles and Nautilus factors.

<u>Applying Quarles</u>

Regarding the <u>Quarles</u> factors cited above, our Court of Appeals explained in <u>United Capitol Ins. Co. v. Kapiloff</u>, 155 F.3d 488, 494 (4th Cir. 1998),

> [i]t is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism. The declaratory judgment action is designed to allay exactly the sort of uncertainty that flows from the threat that ambiguous contractual rights may be asserted. The declaratory judgment action allows the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings.

<u>See</u> <u>State Farm Fire & Cas. Co. v. Kirby</u>, 919 F. Supp. 939, 942 (N.D. W. Va. 1996) (finding these factors met even in a case where the insurer was a defendant in a related state case alleging unfair trade practice).

In <u>Kapiloff</u>, after the insurance company filed a declaratory judgment action in federal court, the insureds filed a state court action against their insurance company and insurance brokers alleging the insurer breached the insurance policy, while the insurance brokers were negligent in procuring insurance coverage for the insureds. The court in <u>Kapiloff</u> concluded that while the <u>Quarles</u> factors were satisfied in that case,

> "considerations of federalism, efficiency and comity" are quite palpable in this case. Although the [insureds] brought their state action *after* [the insurance company] filed its declaratory judgment action, at the time of the district court's decision not to abstain, the state action was pending. The existence of this state action therefore animates the issues of federalism and comity

   and counsels careful examination of the factors identified in *Nautilus*.

Kapiloff, 155 F.3d at 494.

  As in Kapiloff, there is no doubt that a declaratory judgment from this court will serve a useful purpose in clarifying and settling the legal relations in issue.  In addition, a declaratory judgment from this court as to whether Admiral must defend and indemnify Independence will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the instant proceeding.  However, the court also is mindful of the underlying state proceeding, and thus, has carefully considered the Nautilus factors outlined below.

Applying Nautilus

1. West Virginia's Interest

  Regarding the first Nautilus factor, the State of West Virginia does not have a particularly strong interest in having the issues raised in this federal declaratory action decided in West Virginia state court.  As in Nautilus, "all of the issues of insurance coverage raised here are governed by the substantive law of the State," in this case, West Virginia.  Nautilus, 15 F.3d at 378.  "But that alone provides no reason for declining to exercise jurisdiction.  In analogous situations in which a federal court possesses discretionary power to abstain from deciding state-law questions otherwise properly within its jurisdiction, that

discretion may be exercised only when the questions of state law involved are difficult, complex or unsettled." Id.

Independence has made no argument that the issues before this court are difficult, complex or unsettled. Indeed, as the court in First Financial Ins. Co. v. Crossroads Lounge, Inc., 140 F. Supp.2d 686, 696 (S.D. W. Va. 2001) indicated, "West Virginia's Supreme Court and the courts of her sister states have provided sufficient guidance in the broader areas of contract interpretation and of the applicability of insurance policy exclusions generally, including whether those exclusions comport with public policy." Thus, the court concludes that the State of West Virginia's interest in having these issues decided in West Virginia state court "is not sufficiently compelling to weigh against the exercise of federal jurisdiction." Nautilus, 15 F.3d at 378.

2. Efficiency

As to the next Nautilus factor, whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending, "a federal court should analyze whether its resolution of the declaratory action will settle all aspects of the legal controversy." Mitcheson, 955 F.2d at 239. Our Court of Appeals "has long recognized that it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory judgment action when the result would be to 'try a controversy by piecemeal, or to try particular issues without

settling the entire controversy.'" Id. (quoting Quarles, 92 F.2d at 325).

The court should focus on "'whether the questions in controversy between the parties to the federal suit ... can better be settled in the proceeding[s]' that are already 'pending in the state court[s].'" Nautilus, 15 F.3d at 378 (quoting Brillhart, 316 U.S. at 495, 62 S.Ct. at 1176). "This in turn requires careful inquiry into 'the scope of the pending state court proceeding[s],' including such matters as 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding.'" Id. at 378-79 (quoting Brillhart, 316 U.S. at 495, 62 S.Ct. at 1176). This court "may properly decline to entertain a declaratory judgment action because of the availability of another adequate remedy only if it finds that the other remedy would be a 'more effective or efficient' means of resolving the controversy." Id. at 379 (citation omitted).

The court finds that consideration of this second issue cuts both in favor of and against abstention. The state court action includes additional claims against Admiral and additional parties, including River Oaks and Songer Insurance Agency. Because the state action includes the declaratory judgment action as to the insurance policy and its exclusions as well as the additional

10

parties and claims, the instant action, as compared to the state action, will not settle all aspects of the legal controversy. See Crossroads Lounge, 140 F. Supp.2d at 692 n.7 (noting that cases in which the insurance carrier, in federal court as the declaratory plaintiff on the coverage issue, has also been named as the defendant in a bad faith or unfair claim settlement case in the underlying state case or where the insured has made allegations of misrepresentation of the policy or of negligent failure to procure the requested insurance against the insurer, in those cases "the controversy as between the declaratory judgment plaintiff and defendant encompasses more than just the declaratory judgment issues and might not be settled by the federal action").

However, the court cannot conclude that the matters in controversy among the parties can be *better* settled in the state action, as opposed to the instant action. There has been no substantive activity in the state court action. The state court has not yet heard Admiral's motion to dismiss. The state court will consider the motion to dismiss with the knowledge of this court's decision on the motion to dismiss pending in the instant matter.

The court has considered Independence's argument that the facts of the instant matter are akin to those in Centennial Life Ins. Co. v. Poston, 88 F.3d 255 (4th Cir. 1996). In Poston, the insured filed a state court action two months after the insurance

11

company filed the federal declaratory judgment action. In the state court action, the insured sought enforcement of the policy and damages, and she also filed separate and alternative claims against the insurance agent. Id. at 256. In affirming the district court's dismissal, the Fourth Circuit in Poston found that

> [o]ne factor, however, is particularly salient here: the state court action contains a defendant and a number of issues not present in the federal action. The Postons have asserted claims against Centennial insurance agent Jack Gottlieb, based on his representations about the insurance policy and an alleged negligent failure to procure the insurance requested. Thus, although issuance of a declaratory judgment would settle part of the controversy between the Postons and Centennial Life, it certainly would not settle the entire matter.

Id. at 258. While Poston and the instant action share the common facts that both involve later filed state court actions naming additional parties and alleging additional claims, there is at least one significant difference. In Poston, the Fourth Circuit also was convinced by the fact that "significant discovery has already been undertaken in that [state court] action." Id. Such is not the case in the instant matter, where the state action is, as characterized by Admiral, on the proverbial launching pad. For this court to move forward exercising jurisdiction over the declaratory judgment action would not necessarily result in inefficiency as between the state and federal action.

12

3. Overlapping Issues of Fact or Law/Unnecessary Entanglement

Regarding the third factor, whether permitting the federal action to go forward would result in unnecessary "'entanglement'" between the federal and state court systems, because of the presence of "'overlapping issues of fact or law'", Nautilus, 15 F.3d at 377 (quoting Mitcheson, 955 F.2d at 239), the court finds that both the state action and the instant action arise from the same set of facts. In addition, while the state action includes additional claims and parties, as between Admiral and Independence, the declaratory judgment claims are essentially the same; both seek a declaration as to coverage under the policy. Despite the commonality of issues in the federal and state court actions, it is possible that the state court will dismiss or stay that action upon learning of this court's decision to exercise jurisdiction over the declaratory judgment action, thereby avoiding any entanglement.

4. Procedural Fencing

Finally, the court finds no indication that the instant declaratory judgment action is being used as a device for "'procedural fencing,'" i.e., "'to provide another forum in a race for res judicata'" or "'to achiev[e] a federal hearing in a case otherwise not removable.'" Nautilus, 15 F.3d at 377 (citation omitted). The court must consider whether "a party has raced to federal court in an effort to get certain issues that are already

pending before the state courts resolved first in a more favorable forum ...." Id. at 380.

There is no indication that Admiral filed this action as a method of procedural fencing. Although Admiral filed its action in federal court *first*, the order of filing suit is not dispositive, "but merely another ingredient in the mix ...." Crossroads Lounge, 140 F. Supp.2d at 691 n.4. In any event, as the court in Allstate Ins. Co. v. DiGiorgi, 991 F. Supp. 767, 770 (S.D. W. Va. 1998) acknowledged, "it is not uncommon for insurers to file declaratory judgment actions to determine efficiently their duties under a policy, separate from any other claims alleged by the insured persons or tort victims."

Summary & Conclusions

In the instant matter, a consideration of the Nautilus factors does not yield a clear conclusion in favor of or against abstention. In Kapiloff, the district court made findings on the four factors similar to the court's findings above. Kapiloff, 155 F.3d at 494. In Kapiloff, our Court of Appeals, in reviewing the decision of the district court in proceeding with the action, concluded that "[w]ith this set of mixed indicators and with the declaratory judgment mechanism appropriately employed to serve a useful purpose in clarifying the parties' rights, we cannot conclude that the district court abused its discretion in electing to proceed with this action." Id. Similarly, in DiGiorgi, the

14

late Judge Haden acknowledged that "[a]lthough the second and third *Nautilus* factors argue against retaining jurisdiction, they do not mandate such a result. Consequently, the Court should exercise its discretion in determining whether to retain jurisdiction." DiGiorgi, 991 F. Supp. at 770. As in Kapiloff and DiGiorgi, the court finds it appropriate to exercise its discretion and retain jurisdiction of the instant action. "The concerns of the *Nautilus* factors for federalism, efficiency and comity do not outweigh the *Quarles* factors which favor the exercise of federal jurisdiction in declaratory actions." Id.

Accordingly, it is hereby **ORDERED** that Defendant Independence Coal Company's Motion to Dismiss is **DENIED**.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: May 30, 2007

_____
Mary E. Stanley
United States Magistrate Judge